UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| BRIAN CARROLL and ASHLEY CARROLL, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> WYNDHAM VACATION RESORTS, INC. ) <br> and COMENITY LLC d/b/a COMENITY ) <br> BANK, ) <br> ) <br> Defendants. ) <br> ) | Case No. 6:20-cv-00028-PGB-LRH |

**DEFENDANT WYNDHAM VACATION RESORTS, INC.'S MOTION TO DISMISS**

Defendant Wyndham Vacation Resorts, Inc. ("Wyndham"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves to dismiss the Complaint filed by Plaintiffs Brian Carroll and Ashley Carroll ("Plaintiffs" or "Carrolls") on January 7, 2020 (the "Complaint") for failure to state a claim on which relief can be granted. Plaintiffs cannot by amendment cure the defects in their Complaint. Wyndham therefore respectfully requests that the Court grant this Motion and dismiss Plaintiffs' purported claims against Wyndham with prejudice. Alternatively, Wyndham respectfully moves for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

**I.   INTRODUCTION**

Despite their voluminous allegations, Plaintiffs fail to state a claim for which relief can be granted on any of the following claims they purport to assert against Wyndham:

violation of the Military Lending Act, 10 U.S.C. § 987, *et seq.* (Counts I, II, III, and IV of the Complaint); violation of the Florida Consumer Collection Practices Act, § 559.72(9), Fla. Stat. (the "FCCPA") (Count V of the Complaint); and for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (Count XII of the Complaint). Neither the MLA, the FCCPA, nor the Declaratory Judgment Act, apply to Plaintiffs' alleged purchase of a Discovery VIP membership on March 19, 2019. There was no credit transaction between Plaintiffs and Wyndham. Plaintiffs used a Comenity-issued credit card account to pay Wyndham the entire amount owed. As such, Plaintiffs do not state claims under either the MLA or the FCCPA because: (1) Wyndham did not extend credit to Plaintiffs; (2) Plaintiffs were never indebted to Wyndham; and (3) Wyndham has not engaged in any debt collection activities with regard to Plaintiffs. Even if Wyndham had financed Plaintiffs' entire purchase, Plaintiffs were not covered borrowers under the MLA at the time of the purchase.

Finally, Plaintiffs' declaratory judgment claim impermissibly seeks an advisory opinion on legal questions that are not at issue in this action. As Plaintiffs do not plead any claims against Wyndham in their individual capacity, Plaintiffs may not serve as class representatives for a putative class, and their class claims are precluded as a matter of law. Given these fundamental deficiencies that cannot be cured by amendment, Plaintiffs' claims against Wyndham should be dismissed with prejudice. Alternatively, Plaintiffs should provide a more definite statement of their claims to clarify which allegations apply to Wyndham as opposed to Comenity.

4818-3410-8854

## II.     OVERVIEW OF RELEVANT ALLEGATIONS

Plaintiffs' allegations are replete with generic and conclusory allegations that are internally inconsistent and seem to confuse Defendants Comenity and Wyndham.  For example, in paragraph 46 of the Complaint, Plaintiffs seem to allege that Comenity knew that Wyndham was "submitting unauthorized credit applications and opening authorized credit cards."  Compl. at ¶ 46.  But, in the surrounding allegations, Plaintiffs allege that Wyndham solicits applications from individuals, like Plaintiffs, and submits them to Comenity, which then issues credit cards.  *See, e.g.*, Compl. at ¶¶ 45-48.  Because Wyndham is not a credit card bank, Wyndham could not as a matter of fact or law issue credit cards.  Wyndham is therefore left guessing as to what Plaintiffs allege Wyndham did wrong.

The remaining relevant allegations pertaining to Plaintiffs' transaction with Wyndham are limited.  Plaintiffs claim that on March 19, 2019, they attended a Wyndham sales presentation, during which an unnamed "Wyndham[] representative" asked for "Plaintiffs' personal financial information, which the representative explained, was required before Plaintiffs could sit through the presentation."  *Id.* at ¶¶ 49-50.  Plaintiffs admit that they provided their personal financial information and electronic signatures.  *Id.* at ¶¶ 51-52.  Plaintiffs claim that, at the end of the presentation, Mr. Carroll explained that the timeshare offered was unaffordable because he was "in the military," and that Plaintiffs did not want to be bound by a contract.  *Id.* at ¶ 53.  The representative allegedly offered Plaintiffs a "no interest deal, payable by monthly installment payments of $100," *without a contract*.  *Id.* (emphasis added).  Plaintiffs claim they then agreed to "buy the rights to a timeshare," which they could cancel at any time.  *Id.* at ¶ 54.  Plaintiffs thereafter admit that Wyndham issued a Club

3

Wyndham Discovery Membership Agreement ("Wyndham Agreement"), and attach that contract to the Complaint as Exhibit C.  Compl. ¶¶ 57, and Ex. C.

Plaintiffs claim that, unbeknownst to them, "the representative used their personal financial information and submitted a credit application to Comenity, which Comenity approved." *Id.* at ¶ 59.  Also allegedly "unknown to Plaintiffs, the representative maxed out that credit card to pay for the timeshare interest." *Id.* at ¶ 60.  According to Plaintiffs, the Wyndham Agreement "does not mention a credit card" (*Id.* at ¶ 62), and does not contain certain disclosures allegedly required by the MLA. *Id.* at ¶ 63.

Plaintiffs further claim that the Wyndham Agreement "excludes [a] $159 'Processing Fee' from the financing charge in violation of the MLA." *Id.* at ¶ 65.  As such, according to Plaintiffs, "Plaintiffs… receive[d] inaccurate financial disclosures… [which]… caused them to be charged a finance charge to which they did not agree." *Id.* at ¶ 66.  Thereafter, Plaintiffs "received a package in the mail from Comenity about the credit card, revealing a maxed-out credit line of over $3,000." *Id.* at ¶ 69.

Pursuant to the Wyndham Agreement, a Discovery VIP membership provides the member with a specified number of Club Wyndham points to redeem toward a stay at a Wyndham property within a two-year period. *Id.* at Ex. C.  Wyndham credit agreements used to purchase Club Wyndham points are secured by the points themselves. *Id*. at Section 5, "Membership Suspension and Termination."  However, pursuant to the Wyndham Agreement, Plaintiffs did not finance the purchase through Wyndham, but rather paid for the entirety of their Discovery VIP purchase outright.  Compl. at Exhibit D.

4

### III. ARGUMENT

#### A. Motion to Dismiss Standard.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A complaint must allege a sufficient factual basis "to state a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although this pleading standard does not require overly detailed factual allegations, it "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint cannot rest on "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and alleging "[t]he mere *possibility* the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678) (emphasis added). In other words, merely pleading legal conclusions without specific factual support will not cut it, and a complaint that does no more than couch legal conclusions as factual allegations is doomed to fail, because legal conclusions "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 ("While legal conclusions provide the framework for a complaint, they must be supported by factual allegations."); *see also id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *see also Twombly*, 550 U.S. at 555

(the court need not "accept as true a legal conclusion couched as a factual allegation"); *Sinaltrainal*, 578 F.3d at 1260 ("'unwarranted deductions of fact' in a complaint are not admitted as true for purposes of testing the sufficiency of plaintiff's allegations").

All of Plaintiffs' claims arise under federal and state statutes. "The starting point in statutory interpretation is the language of the statute itself." *Bankston v. Then*, 615 F.3d 1364, 1367 (11th Cir. 2010). "If the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case and the statutory scheme is coherent and consistent, the inquiry is over." *Id.*

**B. Plaintiffs Cannot State A Claim Under the MLA.**

The MLA does not apply for three reasons to either Plaintiffs or to Wyndham based on the facts alleged in the Complaint. First, Brian Carroll was not a covered member under the MLA on March 19, 2019, and therefore Ashley Carroll was not a covered dependent under the MLA. Second, as to Plaintiffs' purchase, Wyndham is not a creditor as defined by the MLA and its relevant implementing regulations. Third, the Discovery VIP membership Plaintiffs purchased is expressly exempt from the MLA. All three reasons will be discussed in further detail below.

*1. Plaintiffs were not covered borrowers under the MLA.*

The Complaint does not plausibly allege that Plaintiffs were covered by the MLA on March 19, 2019. A "covered member" under the MLA "means a member of the armed forces who is . . . (b) on active Guard and Reserve Duty." 10 U.S.C. § 987(i)(1). "'[A]ctive Guard and Reserve Duty' means . . . full-time National Guard duty performed by a member of the National Guard pursuant to an order to full-time National Guard duty, for a

period of 180 consecutive days or more for the purpose of organizing, administering, recruiting, instructing, or training the reserve components." 10 U.S.C. § 101(d)(6)(A). "'[F]ull-time National Guard duty' means training or other duty, other than inactive duty, performed . . . in the member's status as a member of the National Guard of a State . . . under section 316, 502, 503, 504, or 505 of this title for which the member is entitled to pay from the United States or for which the member is entitled to pay from the United States or for which the member has waived pay from the United States." 10 U.S.C. § 101(d)(5). "Dependent" includes the spouse of a covered member. 10 U.S.C. § 987(i)(2); 10 U.S.C. § 1072(2)(A). Thus, Ashley Carroll was only covered by the MLA to the extent that Brian Carroll was covered.

Plaintiffs allege that Brian Carroll "is an active member of the Florida Army National Guard." *See* Compl. at ¶ 100. The Complaint does not allege what Mr. Carroll's duty status was on March 19, 2019, the day Plaintiffs purchased their Discovery VIP membership. "Active member" is not a duty status defined in 10 U.S.C. § 101. Plaintiffs also do not allege any additional details that would indicate Mr. Carroll's legal duty status on March 19, 2019. Plaintiffs do, however, allege that they were at Sea World with their family on March 19, 2019 (Compl. ¶ 49), which is seemingly inconsistent with the "active Guard duty" status that would have made Mr. Carroll a covered member under the MLA (10 U.S.C. 987(i)(1)). If Mr. Carroll was not a covered member under the MLA, Mrs. Carroll was not a covered dependent. Therefore, Plaintiffs fail to plead they are covered under the MLA as a matter of law.

### 2. *Wyndham is not a creditor under the MLA.*

Plaintiffs' MLA claim also fails because Wyndham did not act as a creditor in Plaintiffs' purchase under the MLA because Wyndham did not extend any credit to Plaintiffs. The MLA borrows the definition of "creditor" from Regulation Z, enacted pursuant to the Truth in Lending Act. *See* 32 C.F.R. § 232.2(i)(3). Per Regulation Z, a creditor is "[a] person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable." 12 C.F.R. § 1026.2(17)(i). In this case, pursuant to the Wyndham Agreement, Wyndham did not extend credit to Plaintiffs, did not assess a finance charge, and was not paid in multiple installments. *See* Compl., Ex. C. Wyndham is therefore not a creditor as that term is defined under the MLA.

Plaintiffs erroneously assert that the $149 Processing Fee they paid was a finance charge within the meaning of the MLA. *See* Compl. ¶ 65. Under Regulation Z, a finance charge "is the cost of consumer credit as a dollar amount. . . . It does not include any charge of a type payable in a comparable cash transaction." 12 C.F.R. § 1026.4(a). It is apparent from Plaintiffs' Discovery VIP purchase agreement that the $149 was not the cost of consumer credit, because Plaintiffs paid the entire cost of their Discovery VIP membership up front, yet was still required to pay the fee. Pursuant to the Wyndham Agreement, Wyndham charged Plaintiffs 0% APR; $0 finance charge; $0 amount financed. Compl. ¶ 64; Compl., Ex. C. Plaintiffs admit that to cover the entire cost of their Discovery VIP Membership, Wyndham received a one-time payment in the amount of $3,753.06, which was charged to Plaintiffs'

8

Comenity credit card. *See* Compl. ¶ 69. Thus, the $149 was not a finance charge as a matter of law. *See* 12 C.F.R. § 1026.4(a).

   3. *Even if the MLA applies, Plaintiffs' purchase would be expressly excluded.*

Even if Plaintiffs were covered by the MLA when they made their purchase, and even if Wyndham is a creditor as that term is defined for the MLA, the Discovery VIP membership product Plaintiffs purchased is expressly excluded from MLA restrictions. For purposes of the MLA, the term "consumer credit" expressly excludes "[a]ny credit transaction that is expressly intended to finance the purchase of personal property when the credit is secured by the property being purchased." 32 C.F.R. § 232.3(f)(2)(iii). Plaintiffs' membership agreement states:

> **5.** **Membership Suspension and Termination.** This Agreement, together with Member status, may be suspended or terminated by Wyndham, its successors or assigns, without further obligation if the Member fails to make installment payments of the Purchase Price, as set forth above, or fails to comply with the terms and conditions of this Agreement and/or the terms and conditions of the various program and benefits of Discovery. The terms and conditions of this Agreement and of the Discovery programs and benefits may be changed from time to time at the sole discretion of Wyndham, its successors or assigns.

Compl. at Ex. C. Thus, if a member fails to fully pay for their financed Discovery VIP points, Wyndham's recourse is to revoke the member's access to the purchased points.[1] That type of

---

[1] Plaintiffs' Discovery VIP points are payment intangibles as a matter of law. *See* § 679.1021(1)(pp) (defining "General intangible" as "any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles

recourse fits the definition of a security interest that is exempt from the MLA. *See* 12 C.F.R. § 1026.2(a)(25) ("Security interest means an interest in property that secures performance of a consumer credit obligation and that is recognized by State or Federal law."). Thus, even if the MLA applied to Plaintiffs and Wyndham in this instance, Plaintiffs' purchase of their Discovery VIP membership would be expressly excluded from the MLA's requirements.

Given these facts, Plaintiffs cannot state a claim against Wyndham under the MLA, and their Counts I, II, III, and IV must be dismissed.

### B. Plaintiffs Cannot State A Claim Under the FCCPA.

Plaintiffs also cannot plead a claim under the FCCPA. To state a claim under the FCCPA, Plaintiffs must establish that: (1) Wyndham is a debt collector; (2) Plaintiffs were the objects of collection activity arising from a consumer debt; and (3) Wyndham engaged in an act or omission prohibited by the FCCPA. *See, e.g., Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282, 1290 (M.D. Fla. 2017) (applying Florida law). Mere conclusory allegations will not suffice for Plaintiffs to state a claim under the FCCPA. *Richard v. JP Morgan Chase Bank, N.A.*, No. 18CV2095T30TGW, 2018 WL 6817077 at *2 (M.D. Fla. Dec. 27, 2018) (applying Florida law) (dismissing plaintiff's FCCPA complaint partially on the basis that plaintiff's allegations that defendant made calls to collect a debt were conclusory and otherwise "failed to allege any facts to link the calls to an attempt to collect a debt"). Plaintiffs have not, and cannot, plausibly allege any element of an FCCPA claim.

---

and software"); *see also* § 679.1021(1)(iii) (defining "Payment intangible" as "a general intangible under which the account debtor's principal obligation is a monetary obligation").

First, Plaintiffs do not allege, beyond conclusory statements, that Wyndham acted as a debt collector within the meaning of the FCCPA. A "debt collector" under the FCCPA is "any person who uses any instrumentality of commerce within this state . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 559.55(7), Fla. Stat. Plaintiffs do not allege that they owe Wyndham a debt, nor do they allege that Wyndham has asserted otherwise. Plaintiffs also do not allege any attempts by Wyndham to collect a debt from them after their initial purchase of their Discovery VIP membership. Plaintiffs also do not allege that they are under any continuing obligation to pay Wyndham with regard to their Discovery VIP membership. *See* § 559.55(6), Fla. Stat. ("'Debt' . . . means any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . ."). Thus, Plaintiffs do not (and cannot) plausibly allege that Wyndham engaged in debt collection activity with regard to their Discovery VIP membership.

Further, as discussed above, Wyndham is not a creditor with regard to Plaintiffs' purchase. Similarly to the MLA, a creditor under the FCCPA is "any person who offers or extends credit creating a debt or to whom a debt is owed…" § 559.55(5), Fla. Stat. Wyndham did not extend any credit to Plaintiffs, and Plaintiffs do not owe Wyndham any debt because Plaintiffs paid for their Discovery VIP membership outright using their Comenity credit card. For this reason, too, Plaintiffs cannot state a claim against Wyndham under the FCCPA.

### C. Plaintiffs Do Not State A Claim For Declaratory Judgment.

Plaintiffs' claim for declaratory judgment essentially asks this Court for an advisory opinion, and therefore does not meet the requirements of the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act permits federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, declaratory judgment is only available "in the case of an actual controversy." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019) (citations omitted). "[U]nder the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Id.* "The controversy between the parties . . . must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* Thus, where there is no real legal dispute threatening future harm to the plaintiff, declaratory judgment is not appropriate.

Here, Plaintiffs ask the Court to declare unlawful conduct that is already prohibited by the MLA and the FCCPA. *See* Compl. at ¶ 234. The dispute in this case is not whether the conduct Plaintiffs complain of is prohibited by state and federal law, but whether Wyndham is liable for the claims Plaintiffs assert. Thus, there is no real legal dispute with regard to the declaration Plaintiffs seek. Further, Plaintiffs have not alleged any risk of future harm if declaratory judgment is not granted. Therefore, as to Plaintiffs' declaratory judgment claim, Plaintiffs have not alleged an actual controversy, and instead seek only an impermissible advisory opinion. As such, Plaintiffs' Count XII must be dismissed.

### D. Plaintiffs' Allegations Do Not Warrant Class Treatment.

As shown above, Plaintiffs do not state any claim against Wyndham on an individual basis. For class treatment to be appropriate, Plaintiffs' claims must be typical of class claims, and Plaintiffs must be adequate representatives of the interests of the class. *See* Fed. R. Civ. P. 23(a). As Plaintiffs have not stated any individual claims against Wyndham, they cannot claim to be adequate representatives of a putative class, nor can they plead that their claims are typical of the claims of a putative class. Therefore, class treatment in this case is inappropriate.

### E. Alternatively, Plaintiffs Should Provide A More Definite Statement.

Should the Court find dismissal inappropriate at this stage, Wyndham alternatively moves for a more definite statement of Plaintiffs' claims under Federal Rule of Civil Procedure 12(e). A motion for a more definite statement should be granted where "a complaint is so vague and ambiguous that the party cannot reasonably prepare a response." *Maltese v. Burlington Coat Factory Direct Corp.*, No. 2:19-cv-616-FtM-38MRM, 2019 WL 5391392 at *3 (M.D. Fla., Oct. 22, 2019). As discussed in detail above, Plaintiffs' Complaint does not clearly delineate between Wyndham's alleged unlawful conduct and that of Comenity. *See generally,* Compl. Thus, to the extent the Court does not dismiss Plaintiffs' claims, the Complaint is too ambiguously worded for Wyndham to appropriately respond to the allegations against it. As such, and in the alternative, Wyndham respectfully requests that the Court order Plaintiffs to provide a more definite statement of their claims as to Wyndham.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' claims against Wyndham should be dismissed with prejudice. Alternatively, the Court should order Plaintiffs to provide a more definite statement of their claims as against Wyndham.

Dated: March 3, 2020

Respectfully submitted,

/s/ *Christi A. Lawson*
Mary Leslie Smith
Florida Bar No. 774243
mlsmith@foley.com
Angelica L. Novick
Florida Bar No. 105069
anovick@foley.com
Foley & Lardner LLP
2 South Biscayne Boulevard, Suite 1900
Miami, FL 33131-1832
Telephone: (305) 482-8400
Facsimile: (305) 482-8600

Christi A. Lawson
Florida Bar No. 498351
clawson@foley.com
Foley & Lardner LLP
111 North Orange Avenue, Suite 1800
Orlando, FL 32801-2343
Telephone: (407) 423-7656
Facsimile: (407) 648-1743

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 3, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Christi A. Lawson*
Christi A. Lawson

4818-3410-8854